Walker R. **WADE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21922.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1970.

Decided Jan. 18, 1971.

Petition for Rehearing Denied March 23, 1971.

---

assault, one to three years for carrying the dangerous weapon, and one to three years for the marihuana possession. The Government concedes that the latter conviction cannot stand in view of the intervening decision of the Supreme Court in Leary v. United States, 395 U. S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). By reason of that decision, we reverse the conviction under the third count of the indictment. The validity of the convictions on the counts for assault and carrying a dangerous weapon without a license depends upon whether it was error for the court to permit the trial to proceed in part without defendant being present, and if so, whether the error requires reversal.[4] We conclude that it was reversible error.

Mr. David A. Irwin, Washington, D. C. (appointed by this Court) for appellant.

Mr. Gregory C. Brady, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty. at the time the record was filed, and Roger E. Zuckerman, Asst. U. S. Atty., also entered appearances for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

FAHY, Senior Circuit Judge:

Appellant was convicted of assault upon a police officer with a dangerous weapon,[1] of carrying a dangerous weapon without a license,[2] and of obtaining marihuana without payment of the necessary transfer tax.[3] He was sentenced concurrently to two to six years for the

I

THE ESSENTIAL FACTS

A. The jury retired for deliberations on its verdicts at 11:00 a.m. on the second day of the trial. The court recessed after advising defendant's counsel to remain "available whenever the jury returns." Neither court nor counsel, however, said anything to defendant about remaining available during the jury's deliberations. At 3 p.m. that afternoon the jury returned for further instructions, and in defendant's absence, but with his counsel present, the court repeated instructions which cover some 4½ pages of the transcript. The jury then retired again. At 5:20 p.m. the court again reconvened in the absence of defendant but with his counsel attending. The court had received another note from the jury advising that it was deadlocked on two counts of the indictment and wished further instructions. The court stated that it would excuse the jury until the following morning, at which time it would give the *Allen*

1.  22 D.C.Code § 505(b).

2.  22 D.C.Code § 3204.

3.  26 U.S.C. § 4744(a).

4.  On August 13, 1968 this court remanded the record to the District Court to sup-

plement it "with a finding of the factors surrounding appellant's alleged absence during the trial." The supplemental record is now before us.

charge.[5] Upon reconvening at 10 a.m. the following morning, the *Allen* charge was given, defendant again not being present but with counsel still representing him. The jury retired, the court recessed until 11:40 a.m., and then, in the absence of defendant but with his counsel still attending, the jury returned its verdicts of guilty on the three counts. Defendant returned to court shortly thereafter and was committed by the court.

B. At the hearing on our remand, *see* note 4 *supra*, the judge, referring to the time of the trial, stated that he had noted the absence of defendant and had recessed to see if he could be located. This reference to a recess must be considered with the statement of defendant's trial counsel at the remand hearing that when the first note came to the judge from the jury, counsel discovered that defendant apparently was not in the courthouse, and he went outside and "took some time off * * * to see if we could locate Mr. Wade."

At the remand hearing defendant testified that after the judge had first instructed the jury, his counsel advised him that he could go home and return the next day, that he overslept the next morning and called the judge's chambers around 10:00 to tell the judge that he would be late, that he was told by a lady who answered the telephone "to come as soon as possible because they were waiting," and that he reached the courthouse around 11:00 or 11:30 that morning. Defendant's trial counsel, when called as a witness by the Government, testified

that he did not recall any specific conversation with the defendant when the jury went out to deliberate, but that he did not then or subsequently inform defendant that his presence was no longer required in the courthouse and that he could go home. He was not asked and did not testify, however, that he advised defendant to remain in the courthouse or to be available.[6]

We consider the case without giving credence to defendant's claim that he called the judge's chambers, as to which the judge stated there was no record, or to defendant's claim that counsel advised him he could go home. We also accept counsel's statement that it was his practice to use his own judgment whether or not to poll a jury or to object to the *Allen* charge.

## II

## THE ERROR

■ A. Rule 43, Fed.R.Crim.P., provides that the defendant "shall be present" at every stage of the trial, including return of the verdict, but that his "voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict." [7] The Rule is designed primarily to insure the defendant's presence, not to permit the trial to proceed in his absence. We have in two recent cases given content to the kind of voluntary absence which permits a trial to proceed. Cureton v. United States, 130 U.S.App. D.C. 22, 396 F.2d 671 (1968); United

---

5. Upon being escorted into the courtroom the jury was advised as follows:

    *     *     *     *     *

    It is now practically 5:30 and I have conferred with both counsel and we have agreed that it would be well to excuse you at this time, to return tomorrow morning at 9:50, please, or 9:45, and at that time I will give you a further instruction as you have requested in the case.

    *     *     *     *     *

6. Counsel testified that on the day previous to the jury's retiring for delibera-

tions, he had spoken to defendant about being punctual for court appearances. The record gives no indication, however, that this advice was in any manner connected with the absences with which we are concerned or with the necessity of being present if the jury returned for further instructions.

7. A trial includes such proceedings as occurred in this case during defendant's absence, that is, the proceedings after the jury first retired to consider its verdicts. We do not understand that there is any dispute as to this.

States v. McPherson, 137 U.S.App.D.C. 192, 421 F.2d 1127 (1969), the latter decided subsequently to the decision on the remand of this case. *See also* Cross v. United States, 117 U.S.App.D.C. 56, 325 F.2d 629 (1963).

In *Cureton,* where we reviewed various facets of the problem, including the need for control of the situation by the court, we held that voluntariness of the absence must be clearly established and that this required the defendant to be aware of the processes taking place.[8] In *McPherson* defendant's absence occurred before the Government's testimony was completed. The record showed that when the trial was recessed defendant was advised by the court that "no excuses whatsoever [would be] accepted * * * for your failure to appear." United States v. McPherson, *supra,* 137 U.S.App.D.C. at 195 n.7, 421 F.2d at 1130 n.7. We pointed out, however, that it did not appear from the record that "appellant was apprised that besides bail jumping penalties an additional consequence would be the continuation of trial in his absence, which was tantamount to a guilty plea." [9] 137 U.S.App. D.C. at 195, 421 F.2d at 1130. The trial court, relying upon Rule 43, had held that defendant's absence was voluntary; this court remanded for a hearing to determine whether the standards for voluntariness had been met. Those standards, as we had held in *Cross,* were again held to be those required by Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461

(1938), for the waiver of a constitutional right—"an intentional relinquishment or abandonment of a known right or privilege." We ruled that this standard had not been met, because defendant was not apprised that the trial could be continued in his absence:

> There is no specific warning * * * delivered by the court, advising that if the defendant voluntarily absented himself he would be deemed to have waived his constitutional right to testify and to confront the witnesses against him so that the trial could continue without him.

137 U.S.App.D.C. at 195, 421 F.2d at 1130.

B. We need not probe the question whether constitutional standards apply to waiver of a right to be present after the testimony is completed and the jury retires, returns for further instructions, is given further instructions, and thereafter renders its verdict. *But see* Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L. Ed. 262 (1884).[10]

The constitutional question aside, we conclude that the absence in this case was not of the voluntary sort which under Rule 43 permitted the trial to continue as it did. There certainly was not an "escape or absconding of the defendant," or "a deliberate failure to appear without a reason," such as we referred to in *Cross* and *Cureton.* There was no evidence of a willful intention to interfere with the orderly processes of the court, or of a desire not to be present at

---

8. We remanded the case and, based on the District Court's findings at the hearing on the remand, later affirmed the conviction. Cureton v. United States, 134 U.S.App.D.C. 144, 413 F.2d 418 (1969).

9. The reason his absence in that case was deemed tantamount to a plea of guilty was that he was to be the only defense witness.

10. The question in *Hopt* was whether the defendant had the right to be present when at his trial the court was passing upon the challenge of jurors for bias. In holding that he had the right the Supreme Court said:

> The prisoner is entitled to an impartial jury * * * and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors. The necessities of the defense may not be met by the presence of his counsel only. 110 U.S. at 578, 4 S.Ct. at 204. The Court found that the defendant's absence violated constitutional safeguards. The decision seems to support the view that appellant's absence also raises a question of constitutional dimensions.

times when he knew he should have been in court. The testimony had been completed, the case had been argued to the jury, and the jury had retired. Defendant returned the next morning, late it is true by an hour or an hour and a half, but he did arrive shortly after the verdicts were rendered.

■ In the above circumstances to have proceeded without him, with no previous advice that he need be continously available after the jury retired, was not authorized. Absence which enables a trial to proceed, though voluntary in the sense that it is willed by the defendant, must occur more advisedly than here appears. It is not at all clear that unless advised to remain available or of the possible consequences of not being present, defendant would understand that after the case had been submitted to the jury further proceedings could occur in open court prior to return of the verdicts, or that when reached he need be present at rendition of the verdicts. His leaving the courthouse when the jury retired, and his delay in returning the next morning, even if attributable to negligence, is not the kind of voluntary absence which, with no previous advice as to his obligation, permitted the court to proceed. The defendant cannot be charged with knowledge of the provision of Rule 43 that he "shall be present." A rule such as this, applicable to his personal conduct at trial, should be called to his attention by both court and counsel. Though the language "defendant shall be present" be read to impose a duty upon him, the duty is one which should be known to him.

### III

### THE PREJUDICE

■ It is possible that defendant's absence made no difference in the result reached. The standard by which to determine whether reversible error occurred, however, is not whether the accused was actually prejudiced, but whether there is "any reasonable possibility of prejudice," Walker v. United States, 116 U.S.App.D.C. 221, 223, 322 F.2d 434, 436 (1963), cert. denied, 375 U.S. 976, 84 S. Ct. 494, 11 L.Ed.2d 421 (1964). *See* United States v. Crutcher, 405 F.2d 239 (2d Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969); Rice v. United States, 356 F.2d 709 (8th Cir. 1966); United States v. Neal, 320 F.2d 533 (3d Cir. 1963); Evans v. United States, 284 F.2d 393 (6th Cir. 1960). In considering whether this standard is met, we must keep in mind the importance of a defendant's presence at all stages of his trial. Indeed, this aspect of a trial has constitutional prestige in the Sixth Amendment guarantee of the right to confront adverse witnesses—in good part a constitutional recognition of a psychological influence. Though perhaps to a less degree, the same influence pertains to the right of confrontation of defendant and jury, aside from the usefulness the accused may be to his counsel. This is especially so when as here a deadlocked jury is reinstructed at some length, is later given an *Allen* charge, and subsequently renders its verdicts. Moreover, there is the reasonable possibility that the jury speculated adversely to the defendant about his absence from the courtroom.[11]

■ Defendant's case obviously was a close one.[12] Trial counsel's disclaimer on the remand of any usefulness to him of defendant's presence during the proceedings subsequently to the retirement of the jury—a disclaimer made long after the event—is not an acceptable substitute for what might have eventuated; nor is defendant's answer to a question at the remand hearing, which indicated he did not know what he might have done if present, sufficient to outweigh

11. We do not find prejudice to defendant from his absence when the court at the end of the first day of deliberations excused the jury until the following morning.

12. The deadlock on two counts announced by the foreman must have been on the first and second counts. As we have seen, the conviction on the third count must in any event be reversed.

the reasonable possibility of helpfulness to his case if present. As previously noted his absence was when judge and jury were engaged in open court in proceedings directly bearing upon the decisional processes of the jury. To hold his absence harmless would be too speculative. It would assume to reconstruct what might have eventuated had he been present, when that cannot truly be reconstructed with a degree of certainty essential to avoid the reasonable possibility of prejudice.[13]

Reversed.

WILKEY, Circuit Judge (dissenting):

Rule 43, Fed.R.Crim.P., provides that the defendant's "voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict." This is interpreted by the majority primarily to ensure the defendant's presence, not to permit the trial to proceed in his absence, but I submit that the rule says pretty plainly that the trial can continue if the defendant's absence is voluntary. The test therefore turns upon whether the defendant here absented himself voluntarily.

## I. *Voluntariness*

The appellant Wade absented himself after all the evidence was in, the jury instructed, and while the jury was deliberating. The majority opinion states, "we cannot conclude on this record that defendant's absence was due to a desire not to be present at times when he knew he should be there." On the record I think he had a clear and manifest desire not to be present, and that he knew that he should be there. One interesting set of facts not mentioned in the majority opinion is that this particular appellant was well on his way to being an old pro in the courtroom. The trial and conviction made the subject of this appeal began 11 May 1966. Prior thereto the appellant had received a March 1964 conviction for taking property without right, a June 1964 conviction for attempted unauthorized use of a vehicle, a December 1964 conviction for taking property without right, a March 1965 conviction for carrying a dangerous weapon, and an April 1965 conviction for receiving stolen property. I submit that this veteran of five very recent losing matches with the law—we are not told in how many encounters he was victorious—thus had enough previous experience to realize that while the jury was out he would only be sitting around the courtroom or the corridors, that there was nothing going to take place in which he could be of any help to his attorney, and so he simply went home. All of this is highly relevant to the *voluntariness* of appellant's action.

In United States v. McPherson[1] we held that the defendant had not waived "his constitutional right to testify and to confront the witnesses against him." The defendant there was not apprised that the trial could be continued in his absence, and thus his absence might not be voluntary under Rule 43, in view of the fact that his absence resulted in his unknowingly foregoing clearly defined constitutional rights. McPherson absented himself while the prosecution case was being presented; furthermore, he was scheduled to be the only defense witness. Under those circumstances this court held that McPherson might not

---

13. Our dissenting colleague in footnote 5 points out the delays which have already occurred in this case, with further delay to occur in its final disposition. This unfortunate situation does not bear upon the merits of our decision. During the period of delay, moreover, appellant was incarcerated in this case for more than four years on his two to six year sentence, the convictions for which he was sentenced included one which the Government now concedes was invalid under a Supreme Court decision, and a jury deadlock on the other two charges was broken only after further instructions in his absence, one of which included an *Allen* charge, as to which *see* United States v. Johnson (*Clarence*), 139 U.S. App.D.C. 193, 432 F.2d 626 (1970).

1. United States v. McPherson, 137 U.S. App.D.C. 192, 421 F.2d 1127 (1969).

have made "an intentional relinquishment or abandonment of" his right to testify or to confront the witnesses against him. We thus under the facts of *McPherson* applied as the test of voluntariness the standard required by Johnson v. Zerbst [2] for the waiver of a constitutional right—"an intentional relinquishment or abandonment of a known right or privilege," and remanded for a hearing to determine voluntariness.

But here the majority does not "probe the question" whether appellant Wade's absence is to be tested by constitutional standards, merely saying that it "was not of the voluntary sort which under Rule 43 permitted the trial to continue as it did." Presumably then we are to judge Wade by a lesser standard, and the strict constitutional waiver standard of *McPherson* does not govern this case.

Not only does the *McPherson* standard not compel the result reached by the majority in this case, but, as discussed above, on all the facts Wade's absence should be deemed "voluntary" under Rule 43 by any reasonable standard, constitutional or otherwise. District Judge Keech so deemed it, both at the time of trial and on remand to determine that question.[3]

To my mind the circumstances here certainly would enable this court to "conclude on this record that defendant's absence was due to a desire not to be present at times when he knew he should be there." The appellant's waiver here, as in contrast with *McPherson*, was simply of his right to be present in the courtroom while the jury deliberated and returned its verdict, not a waiver of a right to confront the witnesses or to testify himself. Given appellant Wade's demonstrated experience, he knew what he was relinquishing and he relinquished it intentionally, *i. e.*, a true, knowing waiver. This case is thus not governed by *McPherson*; we can conclude on the facts of this case that appellant's absence was voluntary and under Rule 43 permitted the trial to continue as it did.

## II. *Prejudice*

The majority, after finding that there was error in the District Court's determination that appellant's absence was voluntary under Rule 43, then considers whether such error was prejudicial.[4] The majority establishes "The standard by which to determine whether reversible error occurred, however, is not whether the accused was actually prejudiced, but where there is 'any reasonable possibility of prejudice.' " Taking the correct standard, the majority then proceeds swiftly to the wrong conclusion: "To hold his absence harmless would be too speculative." The majority does this on the reasoning that the disclaimer of both trial counsel and appellant as to anything which the appellant might have done if he had been present was not "sufficient to outweigh the possibilities of helpfulness to his case if present." No one—neither culprit, counsel, nor court—has yet been able to suggest one single, solitary, specific "possibility of helpfulness" in appellant's presence. This being true, it certainly would not be too speculative to hold harmless the appellant's absence under the circumstances of this case.[5]

---

2. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

3. If the legal standard of voluntariness here is something less than the constitutional standard of waiver required in *McPherson*, then obviously the fact that *McPherson* was decided after the District Judge considered the remand of Wade is no ground for reversing, if the District Judge decided the issue of voluntariness reasonably under Rule 43.

4. At the remand hearing District Judge Keech had stated: "I know of no prejudice which occurred in this case insofar as Defendant is concerned."

5. Appellant here committed his offenses on 14 September 1965. Official records show that he was committed to jail on 13 May 1966 after conviction. He was paroled in this case on 24 April 1970, but presently is again in custody on new charges of assault with a dangerous weapon and carrying a dangerous weapon. Whether these will result in revocation of parole is yet undetermined.

On either or both of these grounds, then, (1) that appellant did in fact voluntarily absent himself and that in so doing he knowingly waived his right to be present at the trial, or (2) that, even if his absence be deemed not voluntary under Rule 43, no one yet has been able specifically to suggest any prejudice resulting to the appellant from such action, I would affirm the convictions on counts one and two.

Tamm, Circuit Judge, concurred in the result and filed opinion.

The reversal of the instant convictions —because of an action taken by appellant himself, a chronic malefactor and veteran of numerous brushes with the law—means that appellant will be retried sometime in 1971, approximately 5½ years after the crime. And, of course, if conviction results, there may be new grounds for appeal.