Willie GILES, a/k/a Willie Lee Hairston, Appellant,

v.

UNITED STATES, Appellee.

James D. BURGESS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 82–632, 82–705.

District of Columbia Court of Appeals.

Argued Nov. 16, 1983.

Decided Feb. 21, 1984.

---

James Klein, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., at the time the brief was filed, and Randy I. Bellows, Public Defender Service, Washington, D.C., were on the brief, for appellant Giles. William J. Mertens, Public Defender Service, Washington D.C., also entered an appearance for appellant Giles.

John J. Carmody, Jr., Washington, D.C., for appellant Burgess.

Mary Ellen Abrecht, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, and Charles L. Hall, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and FERREN and BELSON, Associate Judges.

NEWMAN, Chief Judge:

Codefendants Giles and Burgess appeal from jury convictions of first degree burglary, felony murder while armed, armed robbery, assault with intent to commit robbery, and kidnapping. Each appellant assigns numerous errors; however, we find that only two of the issues raised require discussion[1]: whether the trial court constructively amended the felony murder count of the indictment; and whether sufficient evidence existed to prove robbery.

On February 21, 1981, intruders broke into the home of Ms. Lelia Scott, murdered Ms. Scott, assaulted Ms. Scott's roommate, Ms. Aurelia Green, and stole money, a clock, silver flatware, and plates from Ms. Scott's home. Ms. Green testified that some time between 2:30 and 5:30 a.m. on February 21, two men entered her bedroom, pulled the covers over her head, and gagged and bound her while they ransacked her room. David Adams testified under a plea bar-

---

1. Other assigned errors by appellant Giles are that: (1) other crimes evidence was improperly admitted; (2) a perjury instruction should have been given; (3) cross-examination of Adams was improperly curtailed; (4) the kidnapping charge merged with the assault charge; and (5) prior consistent statements by Adams were improperly introduced.

Other assigned errors by appellant Burgess are that: (1) the jury should have been instructed that the killing underlying the felony murder count required a finding of specific intent to kill; (2) the kidnapping and assault charge merged; and (3) appellant did not have effective assistance of counsel. Appellants' arguments regarding these issues are not persuasive.

gaining agreement with the government that he, Giles, and Burgess broke into the Scott home to steal money. Adams testified that Burgess placed a pillow over Ms. Scott's face and Giles hit her in the head with a hammer. Adams then left for Giles' apartment where, he testified, Giles and Burgess later returned with the stolen property described above.

Appellant Giles asserts that his conviction for felony murder must be reversed because the trial court constructively amended the felony murder count of the indictment when it instructed the jury that the crime underlying the felony murder count was the armed robbery of Ms. Scott. The felony murder count of the indictment charged that appellants "while armed with a dangerous weapon, that is, a hammer, in perpetrating and attempting to perpetrate the crime of robbery as set forth in the *fifth* count of this indictment, killed Lelia O. Scott by hitting her with a hammer and strangling her with a belt and scarf...." (emphasis added). In fact, the fifth count of the indictment did not charge robbery, but charged assault with intent to rob Ms. Green. The fourth count of the indictment charged the robbery of Ms. Scott.

Courts have recognized two kinds of erroneous departures from an original indictment—an amendment and a variance.

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment.

*Gaither v. United States,* 134 U.S.App.D.C. 154, 164, 413 F.2d 1061, 1071 (1969) (emphasis in original) (footnotes omitted).

A constructive amendment of an indictment occurs when, even though the charging terms of an indictment are not literally changed, "the evidence presented at trial *and* the instructions given to the jury 'so modif[y] the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment.'" *United States v. Gonzales,* 661 F.2d 488, 492 (5th Cir.1981) (emphasis in original), quoting *United States v. Ylda,* 653 F.2d 912, 914 (5th Cir.1981). *See also Stirone v. United States,* 361 U.S. 212, 217–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960); *United States v. Mangieri,* 224 U.S.App.D.C. 295, 302, 694 F.2d 1270, 1277 (1982). A mere variance becomes a constructive amendment when facts introduced at trial go to an *essential element* of the offense charged, and the facts are different from the facts that would support the offense charged in the indictment. *See Stirone, supra* (constructive amendment when the grand jury charged that conduct interfered with interstate transportation of sand, but the government also offered evidence on interstate exportation of steel).

Appellant Giles argues that the indictment in this case was constructively amended in that he was indicted for the felony murder of Ms. Scott during the course of an assault on Ms. Green, but tried and convicted of the felony murder of Ms. Scott during the armed robbery of Ms. Scott. This argument defies common sense and ignores the actual charging terms of the indictment.

The indictment charged appellant with the murder of Ms. Scott while "perpetrating and attempting to perpetrate *the crime of robbery*...." (Emphasis added.) These are the essential and material charging terms of the indictment, and the additional words "fifth count" are intended merely to specify where "the crime of robbery" is set out. Only count four charges "the crime of robbery." The words "count five" are undoubtedly a clerical error, or in any event mere surplusage which can be disregarded entirely without modifying the material elements of the felony murder count. We need not speculate as to how the error in the indictment occurred. We are convinced that the grand jury indicted appellant for

felony murder in the course of armed robbery, and this is in fact the basis upon which the case was tried and the appellant convicted. Thus, no constructive amendment occurred.

Nor did a literal amendment occur in this case merely because the parties and the court treated the indictment as though it read "fourth count" instead of "fifth count." In *Goto v. Lane,* 265 U.S. 393, 44 S.Ct. 525, 68 L.Ed. 1070 (1924), the Supreme Court held that the trial court did not amend an indictment by reading the word "or" as "and" where all parties stipulated that the indictment should be read in the conjunctive. *Id.* at 402–03, 44 S.Ct. at 527. The Court reasoned that the purpose and effect of the change was not to alter the charging terms of the indictment, but to show that the parties construed and understood the indictment in a similar way. *Id.*

In this case, just as in *Goto,* the trial court's instruction to the jury merely reflected the understanding of the defense counsel and the government that the indictment charged felony murder during the robbery of Ms. Scott. Appellant Giles does not and could not argue that he was not put upon notice that the armed robbery underlay the felony murder count. The record clearly reflects that this was the understanding of the parties throughout the status hearings, the trial, and the post-trial hearings. Moreover, at no time until this appeal was the error in the indictment raised with the court or prosecutor; nor did either defendant object to the jury instruction on this basis. This court will not reverse a conviction on the basis of a technical defect in an indictment where defendant does not object at trial, absent a showing of substantial prejudice. *Hsu v. United States,* 392 A.2d 972, 976 n. 6 (D.C.1978); *Hackney v. United States,* 389 A.2d 1336, 1341–42 (D.C.1978), *cert. denied,* 439 U.S.

1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979). We find no prejudice to defendants from the defect in the indictment in this case. The indictment specifically charged felony murder in the course of the robbery of Ms. Scott, and not a vestige of doubt exists that defendants and their counsel understood the charge as such.

■ Finally, both appellants Giles and Burgess argue that the trial court erred in denying their motions for judgments of acquittal on the armed robbery charge and the felony murder based on the armed robbery. Specifically, appellants contend that the government failed to prove that property of Ms. Scott's was taken from her "immediate actual possession." Although the evidence at trial did not establish exactly where in Ms. Scott's house the stolen property was located, the evidence did establish that the property came from Ms. Scott's home and this evidence, in conjunction with evidence that Ms. Scott was violently prevented from exercising possession over her property, is sufficient to constitute the crime of robbery. *See Rouse v. United States,* 402 A.2d 1218, 1220 (D.C.1979); *United States v. Dixon,* 152 U.S.App.D.C. 200, 204, 469 F.2d 940, 944 (1972). *See also Carey v. United States,* 111 U.S.App.D.C. 300, 304, 296 F.2d 422, 426 (1961).

*Affirmed.*[2]

---

2. We note that the trial court erroneously imposed concurrent sentences on both appellants for the armed robbery underlying the felony murder count, and thus we remand for the limited purpose of vacating the armed robbery conviction and resentencing pursuant to *Whal-* en *v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Doepel v. United States,* 434 A.2d 449, 459 (D.C.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981). *See also Brown v. United States,* 464 A.2d 120, 125 n. 7 (D.C.1983).