Matthew **DAVIS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 83–1068.

District of Columbia Court of Appeals.

Argued Feb. 7, 1985.

Decided Sept. 23, 1985.

---

Vincent A. Jankoski, Washington, D.C., for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Edward C. McGuire, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, MACK and ROGERS, Associate Judges.

NEBEKER, Associate Judge:

Appellant was charged by indictment with three counts of armed robbery and one count of assault with intent to commit

robbery while armed, in violation of D.C. Code §§ 22–2901, –3202, –501 (1981). The charges stemmed from robberies committed on October 26, 1982, and November 17, 1982. After a hearing, appellant's motion to suppress identification evidence was denied, and his trial began. A jury found appellant guilty on all counts. He was sentenced to concurrent prison terms of seven to twenty-one years on each of the first two robbery counts. The court suspended sentence on the remaining two counts and placed appellant on five years probation to be served after his prison term.[1] Appellant now contends that the trial court erred in admitting the identification evidence, in denying his motion for judgment of acquittal on two counts on the ground that they merged with the two other charges, in instructing the jury on the theory of aiding and abetting over appellant's objection, and in commenting on the lighting in the courtroom to clarify for the record the testimony of an eyewitness. Finding no error, we affirm.

The relevant facts may be stated briefly. On October 26, 1982, the Chesapeake Cleaners was robbed by three young men, one armed with a gun. The store was again robbed on November 17, 1982. Eyewitnesses identified appellant as one of the robbers on both occasions, and as the gunman in the first incident. Two eyewitnesses later testified that they recognized appellant from the neighborhood, where they saw him regularly.

On November 2, 1982, the police received an anonymous tip. The caller stated that one of the armed robbers from the October 26 incident was standing on the corner of 6th and Chesapeake Streets, S.E., near Chesapeake Cleaners. The caller described the clothing the person was wearing at the time of this second sighting. Two Metro-

politan Police officers in a squad car responded to investigate the tip. Appellant matched the description given by the tipster. The police officers stopped him; the officer who was driving the squad car displayed his service revolver to effect the stop.

The officers detained appellant near the squad car for approximately 15 minutes while they attempted, unsuccessfully, to locate the anonymous caller. No one at the cleaners admitted making the call; but Mrs. Choung and Miss Lee, the co-owner and her employee, both victims of the October 26 robbery, viewed appellant through the window of the cleaning establishment. At that time, each woman stated that appellant might be the robber, but neither was willing to make a positive identification.[2] At some point during this showup, appellant gave his name to the officers. Subsequently, three witnesses separately identified appellant from a photo array and lineup. A fourth witness identified him from a photo array and a photograph of the lineup.

I

Appellant moved pretrial to suppress identification evidence. His theory was that all identifications were the fruit of his stop and detention on November 2. He argued that the stop for the showup was an arrest made in violation of his Fourth Amendment rights, that his photo was included in the array shown to each witness as a direct result of his identifying himself to the officers upon their request at the time of the stop, that his presence in the lineup was the result of his being identified from the photo array, and that all identification evidence, therefore, had to be suppressed.[3] After hearing evidence and ar-

1. Suspended were consecutive sentences of 10 to 30 years imprisonment for assault with intent to rob while armed and three to nine years for armed robbery.

2. The women later testified that they were afraid to approach appellant for a closer look.

3. The government points out that appellant's photograph had been in police files for two years; as a resident of the neighborhood who matched the description of one of the robbers, his photograph would very likely have been included in the array. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377

gument of counsel, the trial judge ruled the evidence admissible. Appellant argues now, based on the grounds he urged below, that the trial judge erred. We disagree.

■ After the reported second sighting, appellant was stopped for approximately 15 minutes while a police officer attempted to locate the caller and to persuade Mrs. Choung and Miss Lee to view appellant. "[W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." *United States v. Hensley*, — U.S. —, —, 105 S.Ct. 675, 677, 83 L.Ed.2d 604 (1985), citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). A brief stop of an individual, based on reasonable suspicion, to determine his identity while obtaining more information "may be most reasonable in light of the facts known to the officers at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Appellant was released as soon as the officers ascertained that Mrs. Choung and Miss Lee would make no positive identification at that time. Under the circumstances, the duration of the stop did not transmute it into an arrest. *Wilkerson v. United States*, 427 A.2d 923, 925 (D.C. 1981) (stop constitutionally valid when there is a reasonable relationship between the scope of the stop and the justification for its initiation).

■ Appellant contends that, because the officer driving the patrol car drew his service revolver as he approached appellant, the stop was actually an arrest. Ap-

pellant is mistaken. It is reasonable for a police officer to display his weapon while confronting a suspected gunman and such action does not by itself transform a *Terry* stop into an arrest. *See Hensley, supra,* — U.S. at —, 105 S.Ct. at 679–82 (police officer drew revolver to stop suspect described in "wanted flyer" as participant in armed robbery; the stop was nevertheless a valid *Terry* stop); *see also Miley v. United States*, 477 A.2d 720, 723 (D.C.1984). Once appellant had been frisked and found unarmed, he was neither handcuffed nor held at gunpoint. Procedures followed by the police officers were reasonable in light of the facts known to them at the time of the stop. Because appellant's stop was lawful, his "tainted identifications" argument fails.[4]

## II

■ Appellant contends that the trial court erroneously denied his motion for judgment of acquittal on two of the charges of which he was convicted. We find no error.

On October 26, he pointed his pistol first at Miss Lee and then at Mrs. Choung while his cohorts took money from two cash boxes and searched and slapped Mrs. Choung. Because the robbers did not take property from the person of either woman, but rather from the cash boxes on the counter, appellant concludes he is guilty of having committed only one armed robbery in that incident. *United States v. Hopkins*, 150 U.S.App.D.C. 307, 314, 464 F.2d 816, 823 (1972) (robbery of one bank is single offense under the federal bank robbery statute). We disagree. Unlike offenses charged under statutes, like the federal

(1984) (otherwise "tainted" evidence admissible if government can establish it ultimately would have been discovered by lawful means); *United States v. Crews*, 445 U.S. 463, 475, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *United States v. Lewis*, 486 A.2d 729, 735–36 (D.C.1985) (otherwise tainted evidence may be used at trial if government can show "substantial certainty" evidence would have come to light through independent sources). We need not reach this "in-

evitable discovery" argument because we perceive no taint in the identification evidence in any event.

4. The police officers did not violate appellant's Fourth Amendment rights by requesting his name. *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923.

bank robbery statute in *Hopkins*, to which the rule of lenity applies, "robbery [under D.C.Code § 22–2901] is basically a crime against the person." *United States v. Dixon*, 152 U.S.App.D.C. 200, 203, 469 F.2d 940, 943 (1972). The District of Columbia's robbery statute was unambiguously designed to protect persons. *Barringer v. United States*, 130 U.S.App.D.C. 186, 187, 399 F.2d 557, 558 (1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969). Evidence shows that each woman was the victim of a robbery because separate acts of violence were required to prevent each of them from retaining control of the property for which they were responsible. *See Giles v. U.S.*, 472 A.2d 881, 884 (D.C.1984).

■ For the November 17 incident, appellant was convicted of an armed assault on Mrs. Choung with intent to rob her and also of a completed armed robbery of Mr. Choung. Appellant contends that the assault on Mrs. Choung should be considered a lesser included offense of the robbery of Mr. Choung. We do not agree. Mrs. Choung was frightened into abandoning control of the store property upon sighting an armed man. The armed assault with intent to rob her was completed at that point. The assault on Mrs. Choung does not merge with the separate assault on her husband. Mr. Choung appeared when the robbery was in progress to assert his control over the store property. Evidence shows that appellant was aware of Mr. Choung, even though the sight of the gun caused Mr. Choung to seek cover behind a coke machine for fear of being shot. When appellant took Mr. Choung's store money, he robbed Mr. Choung. Because appellant assaulted two people individually on November 17 in order to take the store's money, he committed two distinct offenses. *Barringer v. United States, supra*.

### III

■ On October 26, appellant pointed the pistol while one of his cohorts took the money. On November 17, appellant took the money while one of his cohorts held the pistol. Because appellant did not personally commit each of the acts constituting the armed robbery offenses on those dates, the trial court instructed the jury at the government's request on the theory of aiding and abetting. Appellant objected. Citing *Hazel v. United States*, 353 A.2d 280 (D.C.1976), for the proposition that "[a]n instruction under the aiding and abetting statute is not necessary ... in order for the acts of one principal in furtherance of a crime to be imputed to another principal," *id.* at 283, appellant contends that the instruction was erroneous and prejudicial. Although the phrase in the standard instruction that an aider and abettor need not be present did not apply to the facts of this case, the government's theory that appellant was present and active in each robbery was clear. The instruction included a helpful explanation of the common-law notion that each participant in a joint criminal venture is held accountable as a principal, even though he does not personally commit each of the acts constituting the offense. We perceive no error.

### IV

■ Appellant complains for the first time on appeal that the trial court's comment before the jury about the lighting conditions in the courtroom was error. His complaint is frivolous. The judge spoke for the record, to clarify by comparison with the courtroom's lighting the testimony of a witness characterizing the lighting in the store at the time of the robberies.[5] Appellant, whose own investigator had visited the store, never objected to nor disputed such characterizations of the lighting in the store. The court's comment for the record was not error. *See Watkins v. United States*, 379 A.2d 703, 705–07 (D.C. 1977) (not error for court to explain or comment on the evidence).

5. The trial court commented as follows: "The jury can see what the lighting condition is, but for the record's sake I would say it—the lighting is better than average to very good."

We perceive no error in any of the issues raised by appellant. Moreover, we have reviewed the entire record and find no unassigned error warranting reversal.

*Affirmed.*

MACK, Associate Judge, dissenting:

I cannot agree with the majority's analyses with respect to Points I and II. At the very minimum, I would remand for resentencing.